IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS D. DICK,<br>    **Plaintiff**,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>    **Defendant**. | 2:13-cv-01308-TFM |

**MEMORANDUM OPINION**

July 15th, 2014

## I.  Introduction

Plaintiff, Douglas D. Dick, brought this action pursuant to 42 U.S.C. § 405(g), for judicial review of the final determination of the Commissioner of Social Security that denied his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f (West 2012). The parties have filed cross-motions for summary judgment with briefs in support. (ECF Nos. 10-13). The record has been thoroughly developed at the administrative level. (ECF No. 8-1 through 8-10). Accordingly, the motions are ripe for disposition. For the following reasons, the Commissioner's motion will be **GRANTED**, and Plaintiff's motion will be **DENIED**.

## II.  Background

### A.  Facts

Plaintiff was born on September 8, 1960, making him 49 years old as of the date he filed his application and 50 years old as of the date of the administrative hearing. As a result, he is

1

considered a "person closely approaching advanced age" under the regulations.[1] *See* 20 C.F.R. § 404.1563(d). He is a high school graduate with past relevant work experience as a delivery driver (medium, semi-skilled work) and telemarketer (sedentary, semi-skilled work). (R. 17). Plaintiff alleges disability as of January 1, 2000,[2] due to post traumatic stress disorder ("PTSD"), asthma, a bad left knee, hearing loss, and kidney stones (R. 9, 115, 137). The record reflects that he has not engaged in substantial gainful activity since he filed his application. (R. 11).

Plaintiff was incarcerated from 1995 until January 28, 2010.[3] (R. 32). In March 2009, a physician with the North Carolina Department of Corrections completed an activity restriction form, indicating that Plaintiff was unlimited in his ability to stand, walk, and sit; and limited to climbing one flight of steps, lifting 70 pounds, and pushing and pulling 100 pounds. (R. 249-50). The form also indicated that Plaintiff had to sleep on the bottom bunk because of his impairments. (R. 250). That assessment was re-affirmed in December 2009. (R. 203-04).

Very shortly after his release from prison, Plaintiff presented to Dr. Robert Bazylak's office "for a medical assistance employment assessment form." (R. 263). According to Dr. Bazylak's notes, Plaintiff complained of a history of gallbladder and renal stones, depression, hearing loss, and allergic rhinitis. (R. 263). Dr. Bazylak also noted that Plaintiff was unable to walk or stand for long periods of time because of pain in his knees. (R. 263). Based on this single visit, Dr. Bazylak completed a Health-Sustaining Medication Assessment form for the

---

1. If a person is closely approaching advanced age, the SSA "will consider that [his] age along with a severe impairment(s) and limited work experienced may seriously affect [his] ability to adjust to other work." 20 C.F.R. § 404.1563(d).

2. Although the Plaintiff alleged an onset date of January 2000, the period relevant to his disability determination began on February 18, 2010, the date he filed his application for SSI. *See* 20 C.F.R. §§ 416.305, 416.335; *Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997).

3. In addition to the jobs mentioned *supra*, Plaintiff worked in the prison laundry room during his incarceration.

2

Pennsylvania Department of Welfare, in which he indicated that Plaintiff was temporarily disabled because of kidney stones, gallbladder stones, and PTSD/depression. (R. 265).

In late March 2010, Plaintiff was seen by Dr. Walter Beh in connection with his kidney stones. (R. 275). Dr. Beh's notes reflect that Plaintiff was "a well-nourished white male . . . who is in no acute distress." (R. 276). His examination was unremarkable, and he displayed a "[g]ood range of motion throughout all extremities." (R. 277). Dr. Beh diagnosed him with kidney stones and gastroesophageal reflux disease and also found that he was "hard of hearing." (R. 277). On April 5, Plaintiff underwent bilateral extracorporeal shockwave lithotripsy to break up his kidney stones. (R. 279). After the procedure, Dr. Beh noted that the stones were barely visible and "only mildly obstructive," and that Plaintiff tolerated the procedure well. (R. 281-82).

On April 22, 2010, state agency medical psychologist Michelle Santilli, Psy.D., completed a mental RFC assessment in relation to Plaintiff's SSI claim. (R. 285). She found Plaintiff to be moderately limited in all areas of social functioning and adaption but not significantly limited in all other areas. (R. 284-85). Accordingly, in her view, Plaintiff was able to meet all of the basic mental demands of competitive work on a sustained basis despite the limitations arising from his depressive disorder, PTSD, and personality disorder. (R. 286). Dr. Santilli also completed a Psychiatric Review Technique Form, in which she opined that Plaintiff did not meet or equal any of the Listed Impairments. (R. 287-99).

Plaintiff returned to Dr. Bazylak's office on May 13, 2010 for another disability form, complaining of back and knee pain, which allegedly prevented him from being able to walk or stand for long periods of time. (R. 310). Plaintiff reported that the pain had been around for some time and that he had had knee surgery in the early 1990s. (R. 310). Dr. Bazylak's notes reflect that Plaintiff also reported having a history of asthma, for which he used an inhaler, but he

3

nonetheless continued to smoke half a pack of cigarettes daily. (R. 310). Upon examination, Dr. Bazylak found slight swelling in Plaintiff's knees and pain with walking, but no instability or laxity. (R. 310). With regard to Plaintiff's back, Dr. Bazylak noted that Plaintiff had some tenderness in the L1-2 area, pain, and a limited range of motion. (R. 310). Dr. Bazylak completed a medical source statement in which he indicated that Plaintiff could occasionally lift and carry 100 pounds, but could only stand and walk for one hour or less in an eight-hour workday, and only sit for two hours in an eight-hour workday. (R. 312). He also noted that Plaintiff was limited in his ability to push and pull because of his PTSD and arthopathy, and although he could occasionally bend, balance, and climb, he could never kneel, stoop, or crouch. (R. 312). Dr. Bazylak did not identify any other limitations. (R. 313). This is the last record from Dr. Bazylak.

On May 27, 2010, Plaintiff was seen by Dr. Juan Mercado to establish care for his allegedly ongoing back pain. (R. 364). No examination results were documented during this visit. (R. 361). Plaintiff returned to Dr. Mercado's office on June 18, 2010, for a driver's license physical. (R. 361). Plaintiff had no specific complaints, although he had recently had an upper respiratory infection and had been using his inhaler more often. (R. 361). Dr. Mercado's examination did not reveal any remarkable findings, and Plaintiff displayed a full range of motion in all of his joints. (R. 363).

On June 22, 2010, Plaintiff had a consultation regarding his back pain with Dr. Michael Jurenovich, an orthopedic surgeon. (R. 403). According to Dr. Jurenovich's notes, Plaintiff's back pain began in 1981, and although he visited a chiropractor on occasion, he had not had surgery to address his complaints. (R. 403). Plaintiff reported that his back pain had worsened since his release from prison, with the pain having started to radiate down his legs. (R. 403). Plaintiff displayed pain when his lower lumbar spine area was touched. (R. 403). Straight leg

4

raises were mildly positive in both legs at 90 degrees, and back x-rays were unremarkable, though they did show some mild arthritis. (R. 402). Left knee x-rays were also unremarkable, though they too showed some arthritis. (R. 402). Based on these tests, Dr. Jurenovich diagnosed Plaintiff with lumbar disc disease, with mild, bilateral leg radiculopathy. (R. 403). He also scheduled Plaintiff for an MRI and EMG study of his lower back, the results of which were normal. (R. 403).

Dr. Abu Ali, a non-examining a state agency consultant, completed a physical RFC assessment on June 30, 2010. (R. 374). Dr. Ali noted that Plaintiff's primary diagnosis was COPD, with a secondary diagnosis of lower back pain with radiculopathy. (R. 374). Based on his review of Plaintiff's medical records, he opined that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; stand and walk for at least 2 hours in a workday; sit for about six hours in a workday; and occasionally engage in postural activities. (R. 375-76). However, he was found to be unlimited in his ability to push and pull and engage in manipulative activities. (R. 377). Furthermore, no environmental limitations were noted. (R. 377).

On August 31, 2010, Plaintiff saw Dr. Howard Phillips at Hermitage Orthopedics and Sports Medicine, on referral from Dr. Mercado. (R. 387). According to Dr. Phillips, Plaintiff had been having trouble with his left knee for about six months, after having first injured it in 1985. (R. 390). Plaintiff graded the knee pain as a 5/10. (R. 390). Examination of Plaintiff's left knee showed a possible mild effusion, and he had both medial and lateral joint line tenderness. (R. 390). Dr. Phillips also reported that x-rays showed "bone on bone in the lateral compartment and other degenerative changes." (R. 390). At the end of the visit, Dr. Phillips informed Plaintiff that he would probably eventually have to undergo a total knee replacement. (R. 390). For the time being, however, Plaintiff's pain was treated with an injection. (R. 390).

5

On October 6, 2010, Plaintiff was referred to Dr. Patel for mental health treatment. (R. 487). As reflected in Dr. Patel's Adult Psychosocial Assessment, Plaintiff complained of the following problems: depression, anxiety, mood swings, and PTSD, which stemmed from an incident that occurred while he was in the military when four men "chased him and beat him." (R. 487). Dr. Patel noted that Plaintiff denied both suicidal and homicidal ideation, though he had previously attempted suicide in 1992. (R. 487). Dr. Patel also noted that Plaintiff had received counseling while he was in jail. (R. 487). A mental status exam ("MSE") revealed a depressed mood but was otherwise unremarkable. (R. 489). Based on the exam, Dr. Patel assessed a current GAF score of 60 and a highest past year score of 70. (R. 489). Plaintiff sought treatment from Dr. Patel once more in 2010 and then four times in 2011, and although Dr. Patel's notes are largely unintelligible, it appears that Plaintiff's mental health condition remained unchanged throughout this period. (R. 490-94).

In December 2010, Plaintiff was seen by Dr. David Yeropoli and Joanne Moncello, C.N.S., for a psychiatry consultation prior to establishing care with the Veterans' Administration. (R. 445). Plaintiff was observed to be easily engaged and talkative. (R. 445). He reported that he used to be an outgoing guy, but that changed when he joined the military. (R. 445). He also indicated that he was "attacked" by six men when he was in the military. (R. 445). Ever since the attack, he had been nervous, jumpy, distrustful, and suffered nightmares. (R. 445). Despite these problems, Plaintiff had not received any significant psychiatric care throughout his adult life, though Dr. Yeropoli did note that Plaintiff had recently started to see Dr. Patel and had been prescribed medications for his mental health issues. (R. 445). A MSE revealed that Plaintiff was alert, oriented, pleasant and cooperative. (R. 446). His gait was within normal limits, his speech was normal, his thoughts were organized and directed, and his insight and judgment were intact.

(R. 446). His mood, however, was "down sometimes." (R. 446). Dr. Yeropoli's impression was mood disorder, not otherwise specified. (R. 446).

In February 2011, Plaintiff underwent a NCS/EMG study. (R. 413). At the time, he complained that he had pain radiating down his left leg, all the way to his toes. (R. 413). He also experienced some numbness and tingling. (R. 413). The pain was alleged to have been constant. (R. 413). The results of the NCS were within normal limits. (R. 415). The EMG study, however, revealed acute neurogenic findings in all muscles in the lower extremities as well as the lumbar paraspinals, which was suggestive of an L4-L5 and L5-S1 radiculopathy.

Plaintiff again saw Dr. Jurenovich on March 8, 2011, chiefly complaining of continued lower back problems, with pain radiating down his legs. (R. 495). An examination revealed pain, weakness, stiffness, and a poor range of motion, but no effusion. (R. 495). Dr. Jurenovich noted that Plaintiff was in need of an epidural injection for his pain. (R. 495).

On April 14, 2011, Plaintiff had a check-up with Dr. Mercado for his chronic back and leg pain. (R. 416). Plaintiff appeared normal upon examination, however, and he was referred to a pain management specialist for more epidural injections. (R. 419).

Plaintiff returned to Dr. Mercado's office in May 3, 2011, for a follow-up to refill his prescriptions and get paperwork filled out for disability. (R. 421). He rated his pain at the time as a 6-7/10. (R. 421). Dr. Mercado noted that Plaintiff's condition had been stable with no exacerbation, and upon examination, Plaintiff did not display any abnormalities. (R. 421). Dr. Mercado also noted that Plaintiff occasionally used pain medications for his back and was in the process of obtaining a pain management specialist, though he was having issues with his insurance coverage. (R. 426). After this visit, Dr. Mercado completed a medical source statement, in which he opined that Plaintiff could frequently lift and carry 20 pounds and

7

occasionally lift and carry 25 pounds. (R. 430). Furthermore, in Dr. Mercado's opinion, Plaintiff could stand and walk just one-to-two hours a workday and sit two-to-four hours; occasionally bend, kneel, stoop, and crouch (though he was unlimited in balancing in climbing); and could not be exposed to rooms with poor ventilation, wetness, dust, or fumes, odors, and gases. (R. 431-32). Dr. Mercado also found that Plaintiff needed to lie down two times per day for 15 to 30 minutes at a time. (R. 432).

On May 11, 2011, Dr. Patel completed a Rating of Impairment Severity for Listing 12.06. (R. 428). According to Dr. Patel, Plaintiff had recurrent and intrusive recollections of a traumatic experience, causing marked distress and marked restrictions in activities of daily living and maintaining social functioning. (R. 428).

Dr. Jurenovich also completed a medical source statement relative to Plaintiff's claim. (R. 433). He opined that Plaintiff could frequently lift and carry up to 10 pounds, and occasionally lift and carry up to 25 pounds. (R. 433). Additionally, he found that Plaintiff could stand and walk for three hours a day and sit for eight hours a day, with a sit-stand option. (R. 434). Dr. Jurenovich also opined that Plaintiff was limited to pushing/pulling no more than 20 pounds. (R. 434). Finally, he found that Plaintiff could occasionally perform all of the postural activities. (R. 434). No other limitations were noted. (R. 435). In support of his opinions, Dr. Jurenovich pointed to the results of Plaintiff's recent MRI. (R. 433-35).

B.     **Procedural History**

Plaintiff protectively filed an application for SSI on February 18, 2010. His claim was initially denied, and Plaintiff requested a hearing, which was held on August 4, 2011 before Administrative Law Judge ("ALJ") Joanna Papazekos. (R. 9, 24). Plaintiff was represented by counsel and testified at the hearing, as did an impartial vocational expert ("VE").

On October 7, 2011, the ALJ denied Plaintiff's claim, after having found that he retained the ability to perform a limited range light work and, therefore, was not "disabled" under the Act. (R. 6-19). The ALJ's decision became the final decision of the Commissioner on July 15, 2013, when the Appeals Council denied Plaintiff's request for review. (R. 1-4). On September 11, 2013, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. These cross-motions for summary judgment then followed.

### III. Legal Analysis

#### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 400 (1971) (citation omitted). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010) (citation omitted).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform other work that exists in significant numbers in the national economy. *See* 42 U.S.C . § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett*

*v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (citation omitted); 42 U.S.C. § 423 (d)(1). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled *per se* because he suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) if the claimant suffers from a less severe impairment, by demonstrating that he is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes him from returning to his former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503.

Where a claimant has multiple impairments that may not individually reach the level of severity necessary to qualify for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d

Cir. 2009); 42 U.S.C. § 423(d)(2)(C).

B.  **ALJ's Decision**

In this case, the ALJ determined that Plaintiff was "not disabled" within the meaning of the Act at the fifth step of the sequential evaluation process. At step 2, the ALJ found that Plaintiff suffers from a number of severe impairments (mild degenerative disc disease of the lumbar spine with radiculopathy, arthropathy of the knees, asthma, depression, PTSD, anxiety, and a personal disorder). (R. 11). However, the ALJ found at step 3 that none of the impairments, alone or in combination, meet or equal any of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 11-13).

Accordingly, the ALJ went on to assess Plaintiff's RFC and found that he could perform light work with the following additional limitations:

> the claimant is able to stand/walk for approximately 3 hours in an eight hour workday; the claimant is able to sit for approximately 6 hours in an eight hour workday; the claimant is limited to no more than occasional balancing, stooping, and climbing of steps; the claimant is precluded from any kneeling, crouching, or crawling; the claimant should be permitted a sit/stand option to be exercised no more than a few minutes per hour; the claimant should have no exposure to temperature extremes, extremes of wetness or humidity, or vibration; the claimant should have no exposure to dust, fumes, gases, odors, or other pulmonary irritants; the claimant should have no exposure to unprotected heights, dangerous moving machinery, or other workplace hazards; the claimant is limited to working with things rather than people; the claimant should have no contact with members of the general public; the claimant may not work as part of a team.

(R. 13). In reaching that determination, the ALJ assigned great weight to the opinions of the state agency medical and psychological consultants, Drs. Ali and Santilli. (R. 17). She also assigned some weight the mental RFC assessment completed by Dr. Santilli, although she found that Dr. Santilli overstated Plaintiff's inability to interact socially. (R. 17). She also gave some weight to the opinions of Dr. Jurenovich, whose findings the ALJ found to "closely approximate the claimant's [RFC]," and Dr. Mercado. (R. 17). In contrast, the ALJ decided to assign no weight to

11

the opinions of Dr. Bazylak, remarking that they appeared to have been given "for the purpose of helping the claimant secure medical insurance" and calling them "simply perplexing." (R. 17). She also assigned little weight to Dr. Patel's opinions since she found them to be inconsistent with the other evidence in the record and internally inconsistent. (R. 17).

After determining that Plaintiff did not retain the RFC to perform his past relevant work, (R. 17), the ALJ went on to assess whether there are other jobs existing in the national economy that he can perform. (R. 18). Based on the testimony of the VE, the ALJ found that Plaintiff could perform the representative jobs of router, office helper, and marker. Therefore, the ALJ concluded that Plaintiff was "not disabled" under the Act. (R. 19).

**C.     Discussion**

Plaintiff raises three challenges to the ALJ's finding of "not disabled" at step 5 of the sequential evaluation. First, he argues that the ALJ failed to properly consider the medical evidence. Second, he contends that he should have been found disabled under the Medical-Vocational Guidelines (the "grids"), specifically rule 201.12. Third, he argues that the ALJ provided insufficient reasons for rejecting his testimony as not credible. For its part, the Commissioner argues that the ALJ's decision should be affirmed, as it is supported by substantial evidence. The Court agrees with the Commissioner, but will address Plaintiff's contentions *seriatim*.

        1.     *The ALJ Properly Considered the Medical Evidence in the Record.*

Plaintiff's first argument boils down to an attack on the ALJ's decision to reject some of the opinions of his treating physicians in favor of the opinions of the non-examining medical and

psychological consultants.[4] Under the so-called "treating physician rule," an ALJ must accord a treating physician's opinion "great weight, especially when it reflect[s] expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)). The ALJ can, however, reject a treating physician's opinion if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in the case record," so long as she provides some indication as to why she is rejecting it. *Fargnoli*, 247 F.3d at 42.

In this case, the ALJ methodically considered each of the medical opinions in the record and sufficiently explained her reasons for adopting or rejecting them. (R. 17). Substantial evidence supports her decision.

First, in regards to Dr. Mercado, the ALJ correctly concluded that his opinions regarding Plaintiff's ability to sit, stand, and walk were inconsistent with the other evidence in the record. Specifically, while Dr. Mercado found that Plaintiff could only sit and stand for one or two hours and could only sit for four hours during a workday, Dr. Jurenovich, another treating source, did not agree that Plaintiff was so severely restricted. Neither did the non-examining consultant Dr. Ali. Thus, Dr. Mercado's opinions about Plaintiff's ability to sit, stand, and walk during a

---

4. The ALJ actually adopted a number of the opinions of Plaintiff's treating sources, specifically those of Drs. Jurenovich and Mercado. In particular, the ALJ remarked that Dr. Jurenovich's findings "closely approximate[d] the claimant's residual functioning capacity" and their assessments largely mirror one another. (R. 17). Where the ALJ decided to veer from Dr. Jurenovich's findings, her assessment was actually *more restrictive* than Dr. Jurenovich's. She found that Plaintiff could sit for only six hours during a workday, whereas Dr. Jurenovich found that Plaintiff could sit for eight hours, and she also included a number of environmental restrictions in her RFC, whereas Dr. Jurenovich did not. (R. 13). Similarly, the ALJ's RFC assessment largely comported with Dr. Mercado's opinions regarding Plaintiff's ability to lift and carry, though they parted ways in terms of Plaintiff's ability to sit, stand, and walk. (R. 13). Therefore, the Court understands the thrust of Plaintiff's argument to be directed at the ALJ's treatment of Dr. Bazylak's opinions, to which the ALJ decided to accord no weight.

workday were not entitled to controlling weight and the ALJ set forth a sufficient reason for rejecting them.

The same is true with respect to the Dr. Bazylak's opinions. For one thing, Plaintiff saw Dr. Bazylak saw just <u>two times</u> and on both occasions solely for the purpose of obtaining disability paperwork. As the regulations make clear, a medical provider will <u>not</u> be considered a "treating source" "if [the claimant's] relationship with the source is not based on [his] medical need for treatment or evaluation, but solely on [his] need to obtain a report in support of [his] claim for disability." 20 C.F.R. § 416.902. Thus, as a non-treating source, Dr. Bazylak's opinions were not entitled to controlling weight. 20 C.F.R. § 416.927(d)(1). Even if they could be entitled to such weight, the ALJ provided a sufficient reason for discounting them. As the ALJ concluded, Dr. Bazylak did not point to any medical evidence in support of his opinions. Instead, he simply filled out a check-box form, which is considered "weak evidence at best" of a claimant's disability. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Moreover, because Dr. Bazylak saw Plaintiff just twice and for the sole purpose of filling out disability forms, he "might have been leaning over backwards to support the application for disability benefits." *Pysher v. Heckler*, 640 F. Supp. 837, 840 (E.D. Pa. 1986) (citations omitted). Thus, the ALJ was appropriately skeptical of his opinions. He was also appropriate in his characterization of Dr. Bazylak's opinions as "perplexing." Dr. Bazylak said that Plaintiff could lift and carry up to 100 pounds, yet he also opined that Plaintiff could not push or pull on account of his PTSD. The Court, like the ALJ, fails to see the connection.

Finally, the ALJ was within her authority to assign little weight to Dr. Patel's opinions, which were entirely unsubstantiated and inconsistent with the opinions of Dr. Santilli, the largely unremarkable MSEs performed by Dr. Yerpoli and Ms. Moncello, and, in fact, Dr. Patel's own

14

examinations and assessments, including the finding that Plaintiff had a GAF score of 60. Because the ALJ considered the opinions of each of Plaintiff's treating sources and more than sufficiently set forth her reasons for deciding to reject some of those opinions, Plaintiff's first argument fails.

2. *Medical-Vocational Guidelines Rule 201.12 Did Not Compel a Finding of "Disabled."*

Plaintiff next contends that the ALJ should have applied grid rule 201.12. That rule, according to Plaintiff, would have compelled a finding that he is "disabled" because he is closely approaching advanced age, has limited education, has either unskilled or no previous work experience, and is limited to "at most" sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2. The trouble with Plaintiff's argument is that he was not limited to "at most" sedentary work. Rather, he was found to be able to perform a *limited range of light work*.[5] Specifically, while he was found to be capable of performing the lifting requirements of light work, he was found incapable of standing and walking for more than approximately three hours in a workday, which is less the six hours necessary to perform the full range of light work, but is beyond the two hours necessary to perform the full range of sedentary work. *Lackey v. Colvin*, No. 12-516, 2013 WL 1903662, at *3 (W.D. Pa. May 7, 2013). He was also found to need a sit/stand option, which would allow him to stand and exercise for a few minutes each hour, and had a number of non-exertional impairments. That being the case, the grid rules did not compel a finding of "disabled"

---

5.    "Sedentary work as involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools" 20 C.F.R. § 416.967(a). Periods of walking and standing may be required "occasionally," *id.*, but "should generally total no more than about 2 hours of an 8–hour workday." SSR 83–10, 1983 WL 31251, at *5 (SSA Jan. 1, 1983). "Light work" means "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Additionally, the full range of light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday." SRR 83–10, 1983 WL 31251, at *6.

or "not disabled." SSR 83-12, 1983 WL 31253, at *1 (SSA 1983). As the ALJ explained, because Plaintiff fell between two exertional levels and had non-exertional impairments, the grids were merely a "framework," and, as such, it was wholly appropriate for the ALJ to rely on the testimony of the VE to determine whether there are jobs existing in significant numbers in the national economy that Plaintiff can perform. *Id.* at *3 (recognizing that if a claimant's "exertional level falls between two rules which direct opposite conclusions" and a claimant falls "somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work," an ALJ should resort to vocational evidence to determine whether the occupational base is eroded).

3. *The ALJ Did Not Err in Assessing Plaintiff's Credibility.*

Finally, Plaintiff challenges the ALJ's finding that his subjective complaints of pain were not entirely credible. The Third Circuit Court of Appeals has held that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason*, 994 F.2d at 1067. "Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." *Bair v. Comm'r of Soc. Sec.*, No. 09-05, 2010 WL 3222123, at *9 (W.D. Pa. July 23, 2010).[6] "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). If the ALJ does not find a claimant's subjective complaints to be credible, she may reject them,

---

6. The Commissioner argues that "[s]ubjective complaints must be substantiated by objective medical evidence," Br. in Supp. of Def.'s Mot. for Summ. J. at 15 (ECF No. 13), but she is somewhat mistaken. Our appellate court has made clear that there *need not* be objective evidence of pain, as long as there is *objective evidence of a medical condition* that could reasonably produce the pain suffered. *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984).

16

partially or fully, in favor of other medical evidence in the record, so long as she discusses the evidence that contradicts the claimant's subjective complaints. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999); *Gupta*, 2010 WL 2835719, at *15. When assessing a claimant's credibility

> [i]n instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

*Schaudeck*, 181 F.3d at 433 (quoting SSR 95-5P, 1995 WL 670415, at *2 (SSA Oct. 31, 1995)) (emphasis removed). As long as the ALJ substantiates her credibility finding with substantial evidence, it will not be disturbed. *Van Horn v. Schweiker*, 717 F.2d 871, 873-74 (3d Cir. 1983); 20 C.F.R. § 404.1527(e).

The Court finds that the ALJ sufficiently set forth her reasons for discounting Plaintiff's subjective complaints of pain. She discussed Plaintiff's testimony at length, and then proceeded to explain how his complaints were belied by objective medical evidence of record, including, *inter alia*, unremarkable x-rays, MRIs, Nerve Conduction Studies/Electromyography, and other forms of diagnostic testing. The ALJ also appropriately took into account the relatively conservative and sporadic treatment Plaintiff received. *See* 20 C.F.R. § 416.929(c)(3)(v). Thus, the Court can find no basis to disturb the ALJ's well-reasoned and thoroughly explained credibility finding. In any event, the ALJ decided to give Plaintiff the benefit of the doubt by limiting him to light work, with the other aforementioned limitations, which sufficiently took into consideration Plaintiff's allegations regarding the disabling effects of his pain.

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges that he faces in seeking gainful employment. Under the applicable standard of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is "not disabled" within the meaning of the Social Security Act. An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS D. DICK,
      Plaintiff,

v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

2:13-cv-01308-TFM

## ORDER OF COURT

**AND NOW**, this 15th day of July 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED,** and **DECREED** that the Commissioner's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**. The Clerk shall docket this case **CLOSED**.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: **Terry Wheeler, Esq.**
Email: tkwheeler_law@yahoo.com

**Christy Wiegand, Esq.**
Email: christy.wiegand@usdoj.gov

Via CM/ECF